AIR LINE PILOTS ASSOCIATION INTERNATIONAL, Plaintiff,

v.

PAN AMERICAN WORLD AIRWAYS, INC., Defendant.

TRANSPORT WORKERS UNION OF AMERICA, AFL–CIO,

v.

PAN AMERICAN WORLD AIRWAYS, INC., Defendant,

v.

TRANSPORT WORKERS UNION OF AMERICA, AFL–CIO; John J. Kerrigan, individually and as Director, Air Transport Division TWU; Michael Bakalo, Individually and as International Vice President, TWU; George Roberts, Individually and as International Vice President, TWU; et al., Counter-Defendants.

FLIGHT ENGINEERS INTERNATIONAL ASSOCIATION, PAA CHARTER, AFL–CIO, Plaintiff,

v.

PAN AMERICAN WORLD AIRWAYS, INC., Defendant.

INDEPENDENT UNION OF FLIGHT ATTENDANTS, Plaintiff,

v.

PAN AMERICAN WORLD AIRWAYS, INC., The Cooperative Retirement Income Plan, and Pension Committee Members, Martin Shugrue, Robert Adams, C. Raymond Grebey, Roger Cooke and C.J. David Davies, Defendants.

Nos. 84 CV 3357, 84 CV 3361, 84 CV 3362 and 84 CV 3626.

United States District Court, E.D. New York.

Nov. 1, 1984.

Asher W. Schwartz, Malcolm A. Goldstein, New York City, of counsel, O'Donnell & Schwartz, New York City, John F. Henning, Jr., James R. Ritchie, San Francisco, Cal., of counsel, Henning, Walsh & Ritchie, San Francisco, Cal., for plaintiffs.

Ernest L. Garb, New York City, Harry Rissetto, Tom Reinert, of counsel, Morgan Lewis & Bockius, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

The unions representing four separate groups of employees [1] at Pan American World Airways, Inc. ("Pan Am") seek an injunction restraining defendant, Pan Am, from freezing pension benefit accruals in certain employee pension plans. Pan Am, in turn, seeks an injunction against a strike by the Transport Workers Union ("TWU"). [2]

During 1984 Pan Am obtained a conditional waiver of its pension funding obligations from the Internal Revenue Service. As a condition to the waiver, the IRS required Pan Am to freeze all pension benefit accruals retroactive to January 1, 1984. Pan Am commenced negotiations with the unions regarding its proposal to freeze benefit accruals. Those negotiations failed, however, and on August 10, 1984, Pan Am unilaterally implemented the freeze, five days before the IRS-imposed deadline.

The unions contend that Pan Am's actions violate the collective bargaining agreements among them and thus, give rise to a "major dispute" under the Railway Labor Act. [3] 45 U.S.C. § 151 et seq. Pan Am responds that its actions are at least arguably permitted by the agreements and thus, that the dispute is "minor."

If a dispute is deemed major, the Act requires the parties to maintain the status quo pending exhaustion of statutory procedure set forth in sections 5 and 6. 45 U.S.C. §§ 155, First, 156, 160. That procedure includes negotiation, mediation, arbitration, and ultimately, in certain instances, resort to a Presidential Emergency Board. *See Detroit & Toledo Shore Line Railroad Co. v. United Transportation Union,* 396 U.S. 142, 150–51, 90 S.Ct. 294, 299, 24 L.Ed.2d 325 (1969). A minor dispute, on the other hand, is to be referred immediately to binding arbitration by an appropriate Adjustment Board. [4] 45 U.S.C. § 153, First.

On September 6, 1984, this Court held an evidentiary hearing and then consolidated the motions for a preliminary and a permanent injunction. (Tr. 195).

The only issue before this court is whether the controversy generated by Pan Am's August 10, 1984 actions constitutes a "major dispute" or a "minor dispute" under the RLA. The Second Circuit has observed that "although the distinction between major and minor disputes is central to the RLA, that distinction is imprecise and has plagued courts and commentators over the years." *Local 553, Transport Workers Union v. Eastern Air Lines, Inc.,* 695 F.2d 668, 673 (2d Cir.1982). *See Elgin, Joliet & Eastern Railway Co. v. Burley,* 325 U.S. 711, 722–28, 65 S.Ct. 1282, 1289–92, 89 L.Ed. 1886 (1945). It is said that major

---

**1.** A fifth union, the Air Line Pilots Association, withdrew its motion for a preliminary injunction at a hearing on August 14, 1984, and the Court ordered expedited arbitration on the underlying dispute.

**2.** The Transport Workers Union represents mechanic and related ground employees, port stewards, commissary employees, flight dispatchers and flight simulator technicians. (Tr. 20) (Kerrigan).

**3.** In addition to the Railway Labor Act claims, the International Union of Flight Attendants ("IUFA") alone has challenged Pan Am's action under the Employee Retirement Income Security Act of 1974 ("ERISA"). Tr. 128–129 (Henning). It appears, however, that a labor organization lacks standing to maintain an action under ERISA. *See, e.g., District 65, UAW v. Harper & Row Publishers, Inc.,* 576 F.Supp. 1468, 1476 (S.D.N.Y.1983). Nor does it appear that the IUFA can succeed in its efforts to claim to

represent the employees in a class action. *See Drywall Tapers and Pointers, Local 1974 v. Local 530, Plasterers and Cement Masons,* 91 F.R.D. 216, 217–18 (E.D.N.Y.1981). At the very least, a determination as to class action status should await the filing of a motion by the plaintiffs for a determination under Rule 23(c)(1), Federal Rules of Civil Procedure. Local Rule 4(c). Accordingly, I decline to address the merits of the ERISA claim.

**4.** Since the statutory scheme regarding minor disputes contains no requirement that the parties maintain the status quo pending arbitration, an injunction may issue in a case involving a minor dispute "only in those instances when it appears that its absence would prevent the Adjustment Board from giving a significant remedy to the side that prevails before the Board." *Local 553.* 695 F.2d at 675.

disputes involve the formation or alteration of agreements, while minor disputes involve questions of interpretation of existing agreements. *Id.* at 723, 65 S.Ct. at 1289. The distinction can obviously be manipulated to achieve almost any result desired.

In *Local 553*, the Second Circuit articulated the applicable legal standards for distinguishing major disputes from minor disputes:

> To resolve this dilemma, courts have looked to the collective bargaining agreement to determine whether a plausible interpretation would justify the carrier's action. A dispute is major if the carrier's contractual justification for its actions is "obviously insubstantial." On the other hand, a dispute is minor if the contract is "reasonably susceptible" to the carrier's interpretation.

695 F.2d at 673 (citations omitted).

■ Guided by *Local 553*, I find that Pan Am's interpretation of the collective bargaining agreement is at least plausible and, accordingly, that the dispute between the parties is a minor dispute over contract interpretation that lies within the jurisdiction of the Adjustment Board. As there are slight differences in the factual underpinnings of the various disputes, they are now discussed separately.

*TWU and IUFA*

Both the Transport Workers Union ("TWU") and the Independent Union of Flight Attendants ("IUFA") are covered by the Cooperative Retirement Income Plan ("CRIP"). Article VIII of the CRIP provides as follows:

> The Board of Directors shall have the right at any time to amend the Plan in whole or in part, by an instrument in writing, effective retroactively or otherwise to the extend permitted by law....

Defendant Ex. 9, at VIII–1.

> Moreover, Article IX of the CRIP states:
> *Right of the Company to Terminate Plan*

> The company has established the plan as a permanent plan with a bona fide intention and expectation that from year to year it will be able to and will deem it advisable to continue it in effect. However, the Company reserves the right to completely or partially terminate the Plan at any time by an instrument in writing delivered to the Pension Committee.

Defendant Ex. 9, at IX–1. Thus, Pan Am maintains that the Plan language expressly permits it to freeze pension accruals, as it did.

The unions contend, as an initial proposition, that the Plan is not an agreement, and, hence, its provisions are not especially relevant. Rather, they maintain that only those amendments to the Plan that have been incorporated into subsequent collective bargaining agreements constitute "agreements" between the parties.

Pan Am, however, notes that the Plan itself has been incorporated by reference into the agreements between the parties. *Cf. United Steelworkers v. Fort Pitt Steel Casting Division—Conval-Penn, Inc.*, 635 F.2d 1071, 1080 (3d Cir.1980), *cert. denied*, 451 U.S. 985, 101 S.Ct. 2319, 68 L.Ed.2d 843 (1981) ("The pension and insurance benefits are alluded to in the 1975 Agreement, and thus arguably are incorporated by reference."). Pan Am specifically points to provisions in the collective bargaining agreements indicating that Plan benefits "are as set forth in" the summary plan description booklets. TWU Supplement IV, Defendant Ex. 20, at 153; IUFA, Supplement IX, Defendant Ex. 25. Pan Am also notes provisions setting forth Pan Am's purported pledge "to continue" the Plan provisions that form the basis of the union's argument discussed below.

The unions argue that Pan Am has directly violated at least two provisions of the collective bargaining agreement. First, the two unions rely on nearly identical language from their respective agreements:

> Except as required to qualify the Plan under the Internal Revenue Code, and modifications required by the Employee

Retirement Income Security Act of 1974 (ERISA) or any other pertinent law, there will be no other amendments to the Plan during the term of this Agreement and the term of the Agreement next following.

IUFA Paragraph 15, Supplement IX, Def. Ex. 25, at 251. *Cf.* TWU Letter Agreement, Defendant Ex. 25, at 255. It is the unions' position that "no amendments" means *no* amendments, and thus, that the pension freeze is a Plan amendment in violation of the contract, leading to a "major dispute."

Pan Am contends, however, that the provision cited above is no longer in effect, since there have been two agreements subsequent to the 1980 agreement. Moreover, even if the provision remains effective, Pan Am contends that it does not limit its authority to freeze accruals. It is Pan Am's position that the provision must be read in context: the language (which, incidentally, was proposed by Pan Am) followed the granting of several union requests for "improvements" in the Plan. Accordingly, Pan Am maintains that the "no amendment" language really meant that no further union requests for amendments would be granted during the term of the Agreements described therein.

The unions also rely on certain contract provisions in which Pan Am purportedly agreed "to continue" the Plan during the period of the Agreement. *See* Plaintiff's Ex. 4, pp. 4–5; Defendant Ex. 25, at 255. The unions assert that such language constituted a positive commitment on the part of Pan Am to continue the accrual of pension benefits. Pan Am argues that the language referred to its agreement to continue the method of calculating benefits that had accrued. Pan Am reasons, moreover, that an interpretation that the provision constituted an obligation to continue the entire Plan would provide further support for its position, since the Plan contained Pan Am's reservation of its right to make Plan amendments.

Pan Am has presented a "plausible" or "not obviously insubstantial" contractual justification for its position. In short, I am faced with a dispute involving several questions of contractual interpretation, i.e., a minor dispute. Accordingly, the issues that have been raised are appropriate for, and indeed lie within the exclusive jurisdiction of, the Adjustment Board.

*FEIA*

Those employees belonging to the Flight Engineers' International Association are covered by a separate pension plan known as the Cooperative Retirement Income Trust Plan for Flight Engineers ("CRITFE"). The chairman of the Flight Engineers' Negotiating Committee testified at the hearing that the CRITFE has been a collectively bargained plan. Tr. 73–76. (Budd). Otherwise, the issues are essentially identical to those discussed above.

In section 17.1 of the CRITFE Pan Am reserves the right to terminate or amend the Plan. Defendant Ex. 10, at XVII–1. In Article 28(J) of the 1983 collective bargaining agreement the Company agrees "to continue" the Plan during the term of the agreement. Defendant Ex. 27 at 139. And, a June 19, 1981 Memorandum of Understanding, which Pan Am contends is no longer in effect, contains language to the effect that, except as required by law, "there will be no other improvements to the Plan ...." Defendant Ex. 28. Thus, the questions of contractual interpretation in the FEIA's dispute with Pan Am are nearly identical to those existing in the disputes with the TWU and the IUFA. Accordingly, I also deem this dispute to be "minor" within the framework of the RLA.

*OTI*

The FEIA also represents certain Pan Am employees known collectively as the Operations Training Instructors ("OTI"). The OTI, like the TWU and the IUFA, are covered under CRIP, and thus, the company's reservation of rights in that plan applies equally to the OTI. Moreover, Article 25(L) of the 1981 collective bargaining agreement states:

The Company intends to continue the Cooperative Retirement Income Plan indefinitely, but necessarily reserves the right

to modify, suspend, or discontinue it at any time after August 1, 1984.

Defendant Ex. 29. In short, Pan Am can certainly present a plausible contractual justification for its action.

There is, however, a feature of the OTI dispute requiring special discussion. The agreement between Pan Am and OTI expired on August 1, 1984. Prior to August 1, the parties exchanged notices in accord with § 6 of the RLA indicating their intent to renegotiate the Agreement. The freeze of the pension accruals, it is to be remembered, took place on August 10, 1984, after the contract had expired.

In *Detroit & Toledo Shoreline Railway Co. v. United Transportation Union*, the Supreme Court discussed the effect of § 6 notices on the parties' obligations:

> The obligation of both parties during a period in which any of these status quo provisions is properly invoked is to preserve and maintain unchanged those actual, objective working conditions and practices, broadly conceived, which were in effect prior to the time the pending dispute arose and which are involved in or related to that dispute.

396 U.S. 142, 152–3, 90 S.Ct. 294, 300–1 (1969). The unions rely on *Toledo Shoreline* for the proposition that the filing of § 6 notices precludes Pan Am from freezing pension accruals and, consequently, the dispute cannot be minor.

■ Significantly, it should be noted that in *Toledo Shoreline* the contract was silent as to the carrier's authority to take the actions that gave rise to the dispute. *Id.* at 153–54, 90 S.Ct. at 301. Here, Pan Am can point to a specific grant of authority in the contract, as well as to the language of the Plan itself, a document with no expiration date. There is, therefore, every indication that the "status quo" included Pan Am's authority to amend the Plan. Moreover, the § 6 notice served by Pan Am contained a reservation of its right to contest the interpretation of the existing agreement. *See* Plaintiff's Ex. 15.

The Second Circuit's decision in *Local 553* involved a situation similar to this one in which the agreement had expired and notices had been exchanged. 695 F.2d at 671. Nonetheless, the Court employed a "plausible interpretation" analysis as to whether the dispute was minor and thus, appropriate for the Adjustment Board. In short, minor disputes can arise despite the invocation of the status quo provision. Indeed, one court has pointed out the anomalous result of the unions' contention:

> Plaintiff contend[s] ... that the existence of Section 6 negotiations at the time a court is asked to invoke its injunctive power somehow alters the analytical framework outlined above. This cannot be the case since a party could make any dispute major (thereby triggering the settlement procedures for that type of dispute enforceable by the special statutory injunction) by merely filing notice of Section 6 negotiations.

*Air Line Pilots Ass'n v. Northwest Airlines*, 444 F.Supp. 838, 840 (D.Minn.1977), *aff'd* 570 F.2d 257 (8th Cir.1978). Accordingly, the expiration of the collective bargaining agreement does not require a different treatment of the OTI.

### Conclusion

■ Because all the disputes are minor, the entire matter should be referred to the Adjustment Board for arbitration. Injunctive relief is appropriate "only in those instances when it appears that its absence would prevent the Adjustment Board from giving a significant remedy to the side that prevails before the Board." *Local 553*, 695 F.2d at 675.

■ Thus, the courts may enjoin strikes because they wreak irreparable harm that the Adjustment Board cannot undo. *Id.* On the other hand, actions by Pan Am should be enjoined only to prevent "injury so irreparable that a decision of the Board in the unions' favor would be but an empty victory." *Id.* (quoting *Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas Railroad Co.*, 363 U.S. 528, 534, 80 S.Ct. 1326, 1330, 4 L.Ed.2d 1379 (1960)). In this case, an Adjustment Board decision

for the unions could easily be effectuated by simple accounting adjustments since the workers entitled to pension accruals can be readily identified. Accordingly, Pan Am's request to enjoin a strike by the TWU is granted and the unions' requests for injunctive relief are denied.

The parties are directed to settle a form of judgment consistent with the foregoing decision, on notice.

The Clerk is directed to mail a copy of this opinion to the attorneys for both sides.

SO ORDERED.